# Ala. Great So. R. R. Co. *v.* Stewart.

### Setting Out Fire.

(Decided January 9, 1917.  73 South. 827.)

1. **Railroads; Setting Out Fire; Pleading.**—Where the action was against a railroad for negligence in setting out fire, an allegation that said fire was communicated from said engine or locomotive to said property through the negligence of the defendant, its servants or agents, is sustained by showing negligence either in the construction, equipment or operation of the locomotive, or in not keeping the roadbed free from inflammable substances liable to be ignited by passing engines.

2. **Same; Evidence.**—The evidence examined and held to afford an inference that the grass was ignited from sparks from the locomotive.

3. **Same; Pleading.**—A complaint averring that the fire was communicated to the property destroyed by sparks "emitted" from the engine covers a case where sparks are thrown off or given out by the engine from the fire box, as the word "emit" carries, among others, the meaning to throw off or give out, discharge.

APPEAL from DeKalb Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Ed Stewart against the Alabama Great Southern Railroad Company for damages to property occasioned by fire. Judgment for plaintiff and defendant appeals.  Affirmed.

GOODHUE & BRINDLEY, for appellant.  I. M. PRESLEY and HUNT & WOLFES, for appellee.

BROWN, J.—The only assignment of error insisted on by appellant is that predicated on the refusal of the affirmative charge to the appellant on the case as presented under the third count of the complaint.  That count avers that the fire was communicated to the property destroyed "by sparks emitted from the engine or locomotive operated by the defendant, and plaintiff further alleges that said fire was communicated from said engine or locomotive to said property through the negligence of the defendant, its servants or agents, to the damage of plaintiff."

(1) While these averments cast upon the plaintiff the burden of proving that the fire was communicated to the property by sparks emitted from one of defendant's locomotives, the averment of negligence is general, and negligence, either in the con-

struction, equipment, or operation of the locomotives, or in not keeping its roadbed free from inflammable substance liable to be ignited by a passing locomotive, would sustain this count.

The defendant offered no evidence refuting the imputation of negligence; therefore the sole question is whether or not the evidence offered by the plaintiff reasonably afforded an inference that fire was communicated to the property by sparks emitted from defendant's locomotive.—*Miller-Brent Lbr. Co. v. Douglas, et al.*, 167 Ala. 286, 52 South. 414; *South. Ry. Co. v. Dickens*, 161 Ala. 144, 49 South. 766; *Tinney v. C. of Ga. Ry. Co.*, 129 Ala. 523, 30 South. 623.

(2) The only evidence as to the origin and cause of the fire was the testimony of the plaintiff, as follows:

"I live five miles north near Lane's switch. The Alabama Great Southern runs through the edge of my land. I own about 170 acres there. In January, 1914, I had about 50 acres in pasture. A fire occurred in 1914. I was up in the road when the fire began, something like 400 yards, or not hardly so far, from where it originated. The fire originated right at the edge of the ties. From there it blew on over into the meadow. Prior to the time I first saw the fire one of the defendant's freight trains went by there on their track. About a minute after the train had gone by I saw the fire. I was looking toward it at the train. The train was still in sight. The wind was blowing from the west harder than usual. I went down and tried to put the fire out. * * * The train passed something near 12 o'clock or 1 o'clock going north. It was going upgrade. The engine was emitting black smoke when it passed by my place. Prior to the time the train went by, there was no fire in the neighborhood where this fire originated. As to the condition of the roadbed with reference to where the fire originated, there is Johnson grass growing up at the end of the ties, and it had been cut off and had fallen down all along, and that is where the fire originated. The weather was very dry that day. There had been no rains at all in a good while. The fire occurred the 12th of January, 1914."

This evidence, we think, reasonably excludes the possibility that the grass on the roadbed was ignited by other cause than from sparks thrown off by the passing locomotive; and affords an inference that the fire thus originated.—*Southern Ry. Co. v. Kendall & Co.*, 4 Ala. App. 242, 69 South. 328, reviewed by Supreme Court and affirmed 193 Ala. 681, 69 South. 1020; *South-*

[Nashville, Chattanooga & St. Louis Ry. v. Beard.]

*ern Ry. Co. v. Johnson,* 141 Ala. 575, 37 South. 919; *Farley v. Mobile & Ohio R. R.,* 149 Ala. 557, 42 South. 747.

(3) We do not understand the court to hold in *Miller-Brent Lbr. Co. v. Douglas, et al.* that for sparks to be "emitted" from a locomotive they must be thrown off through the smokestack by the exhaust of the engine, but rather that it was not reasonable that they could have otherwise reached the trash pile or the top of the depot building, the burning of which was involved in that case. The word "emit" carries the meaning, among others, "to throw off or to give out; to discharge."—Universal Dictionary, vol. 2, p. 1862. When this meaning is applied to the averments of the complaint, it would cover the fact of sparks being thrown off or given out by the engine from the firebox.

The judgment of the circuit court is affirmed.

Affirmed.